# Murphy *v.* Murphy, Appellant.

*Practice, C. P.— Special verdict— Equity— Interpleader— Submission of question by parties.*

1. Where the orphans' court refuses to pass upon a fund, included in an executor's account, accruing from a sale of real estate without orphans' court proceedings, and against which the executor has claims from deficiency of personal assets, the common pleas, in a subsequent trial of an interpleader proceeding between the executor and the only other party in interest, being the parties in whose names the fund had been deposited in a bank, may permit the apportionment of the fund on equitable principles by the jury, so as to allow the claims of the executor.

Argued December 2, 1924. Appeal, No. 130, Jan. T., 1925, by Sarah C. Murphy, substituted defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1923, No. 6944, on special verdict, in case of Edward J. Murphy v. Commonwealth Title Insurance & Trust Co., and Sarah C. Murphy, intervening. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Interpleader to determine ownership of fund paid into court. Before BARNETT, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

From the record it appeared the parties agreed that questions should be submitted to the jury as follows:

"No. 4. What portion of the fund (of $6,692.47) is to be paid to Edward J. Murphy? Answer: $2,721.03.

"No. 5. What portion of the fund (of $6,692.47) is to be paid to Sarah C. Murphy?" Answer: $3,971.44.

The trial judge submitted three additional questions as follows:

"No. 1. Was there an agreement between Edward J. Murphy and Sarah C. Murphy, through their counsel, that the widow's exemption of $500 was to be paid to her out of the fund in the hands of the Commonwealth Title Insurance and Trust Company? Answer: No.

"No. 2. Was there an agreement between Edward J. Murphy and Sarah C. Murphy, through their counsel, that claims of Sarah C. Murphy, when proven in court, were to be paid to her out of the fund in the hands of the trust company? Answer: No.

"No. 3. Has Sarah C. Murphy proven to your satisfaction any such claims? If so, what is the aggregate amount of such claims, including interest? Answer: Yes, the amount of $1,250.41, which includes exemption."

The court entered the following judgment:

"The court, on motion of counsel for Edward J. Murphy, strikes from the record the recommendations of the jury as contained in the answers to questions three, four and five. And the court further orders and directs the prothonotary to pay to Edward J. Murphy one-half of the money paid into court in the interpleader proceedings by the Commonwealth Title Insurance and Trust Company. The court is of the opinion that this decree should be entered by reason of the fact that the jury in its answers to questions one and two found that there was no agreement between Edward J. Murphy and Sarah C. Murphy regarding the distribution of the fund. That being so, any other claim of Sarah C. Murphy to any part of the fund by reason of being a creditor of the estate can be taken cognizance of only by the orphans' court, and this court would have no jurisdiction in the matter."

Sarah C. Murphy appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*James C. Crumlish,* for appellant.—The court had no right to amend the verdict of the jury after same had been recorded and the jury dismissed: Donaldson v. Howley, 226 Pa. 445; Bruck v. Mausbury, 102 Pa. 35; Clouser v. Patterson, 122 Pa. 372; Walter v. Junkins, 16 S. & R. 414; Shoemaker v. Meyer, 4 S. & R. 452.

If a special verdict is contradictory or irreconcilable no judgment can be entered on it, it must be set aside and a new trial awarded: McHale v. McDonnell, 175 Pa. 632; Loew v. Stocker, 61 Pa. 347; Diehl v. Evans, 1 S. & R. 367; Gelber v. Bank, 53 Pa. Superior Ct. 155.

*Michael D. Hayes,* with him *Wilson & McAdams,* for appellee, cited: Com. v. Pfromm, 255 Pa. 485.

OPINION BY MR. JUSTICE SCHAFFER, January 5, 1925:

This record presents a singular state of affairs and exhibits proof of the fact that it is usually the better part of wisdom to pursue the beaten track of legal procedure rather than to take short cuts, even though they promise greater celerity in results and a saving of expense. Apropos of this thought, it is interesting to note what happened as the suit at bar progressed. After it was begun no pleadings were filed by the real parties in interest; an attempt was made to frame special questions for the jury in lieu of an issue; on the trial the defendant became the plaintiff; the jury to whom five special questions were submitted answered them in a way which the court below deemed contradictory (what they were will be seen by the verdict in the reporter's notes) ; and the trial judge assumed the function of fixing up a verdict as he thought it ought to be. While the situation is not as bad as that pointed out in Cox v. Ledward, 124 Pa. 435, part of Mr. Justice MITCHELL'S opinion in that case will nevertheless bear quotation (p. 447) : "This record is a legal curiosity. On a scire facias in a court of law,

three owners of land are sued by themselves and one
other, as joint holders of a mortgage upon their own
land. Having thus, in advance of even the wave of legis-
lative reform, brushed aside any little technicalities that
might be supposed to stand in the way, the parties went
into court, and the original owner of the land and mort-
gagor being also a party defendant, an appearance and
plea were formally entered for him, although it is spread
out on the face of the proceedings that he had been dead
more than eleven years before the writ issued. A jury
was duly empaneled, and the parties, living and dead,
entered on this mixed contest with themselves and each
other."

The plaintiff, Edward J. Murphy, was the son of Ed-
ward J. Murphy, Sr., whose widow, Sarah C. Murphy,
was the substituted defendant, stepmother of the son.
On the death of Murphy, Sr., he left a small personal
estate, not sufficient to pay his debts, and a residence
property. The widow elected to take against the will,
and, acting on the advice of their respective attorneys,
she and the son joined in a deed to the purchaser of the
house, and, by their agreement, the fund realized from
it was deposited in the Commonwealth Title Insurance &
Trust Company, payable only on their joint order. Ap-
pellant, who was executrix, filed her account in the or-
phans' court, included therein the proceeds of the sale of
the real estate, and claimed to receive thereout the
amount of certain debts of decedent paid by her and also
her widow's exemption, together amounting to $1,250.41.
The orphans' court, on the adjudication of the estate,
held, as we gather from the court's charge, that this fund
had no place in the accounting and declined either to
adjudicate it or consider claims against it. A contro-
versy having arisen between the widow and the son as to
how the fund should be distributed and no agreement
being reached, the son brought suit against the trust
company to recover his share of it; the widow intervened,
alleging that there had been an agreement entered into

that the money due to her from the decedent's estate should be paid to her out of the fund. She was substituted as defendant and the trust company paid the money into court. As before stated, no pleadings of any kind were filed by the real parties to the litigation, but they agreed that two questions should be submitted for the determination of the jury, these questions being "What portion of the fund is to be paid Edward J. Murphy?" and "What portion of the fund is to be paid Sarah C. Murphy?" When he came to charge the jury, the trial judge submitted three additional questions to them. Subsequently, the court, on motion of the son's attorney, struck from the record the findings of the jury as to three of the questions and directed the prothonotary to pay to the son one-half of the fund and disposed of the claim of the widow by stating, "The jury in its answers to questions one and two found there was no agreement between Edward J. Murphy and Sarah C. Murphy regarding the distribution of the fund; that being so, any other claim of Sarah C. Murphy to any part of the fund by reason of being a creditor of the estate can be taken cognizance of only by the orphans' court and this court would have no jurisdiction in the matter," taking no account of the fact that the orphans' court had already denied its jurisdiction. From the order made, Sarah C. Murphy has appealed.

The whole controversy was waged regarding the character of the agreement between the widow and son and whether she was entitled to receive out of the fund reimbursement for moneys she had expended in payment of debts of the decedent. Appellee's evidence was that there was an agreement, but that the amount to be paid to the widow, for debts paid and her exemption, was to be adjudicated by the orphans' court only. Evidently both parties thought that court would adjudicate the amount; as it would not do so, equity will do it on the same principles as are applied in the orphans' court, and this the jury did, under the issues agreed upon by the

parties. While it is true the jury found there was no agreement that the amounts due the widow were to be paid out of the fund, this could only mean that there was no agreement they were to be adjudicated in this particular way, for admittedly they were to be paid thereout if the orphans' court allowed them, and the jury also found that the widow had proven such claims and their aggregate amount, including her exemption, and awarded to her $3,971.44 and to the son $2,721.03. The error of the judgment below is evident when it is considered that by it no provision is made for the son's payment of his share of the decedent's debts, because it awards half the fund to him.

This is not the kind of controversy which should have been decided by a jury, since it involves complicated questions of accounting, but neither of the parties can complain because it has been, for, by their undertaking to dispose of the property in the way they did, they provided that the fund should stand in the place of the property, and should be distributed as if raised by an orphans' court sale, to await which determination it was deposited to their joint account with the Commonwealth Title Insurance & Trust Company, which thereby acquired no other right in it than that of an agent for custody. By this procedure they assented to a determination of their respective interests in the money in a manner different from that ordinarily fixed by the law. They have thus created a situation precisely the same as though both of them had manual possession and control of the fund and could act jointly and not otherwise in regard to it. In this view of the matter, there is no common law remedy which could either properly or adequately work out their respective claims; account render would not apply, because the fund is not in possession of one of them. It is, therefore, obvious that their rights should have been determined by a court of equity, the tribunal specially created for such a purpose, and as the fund is in the custody of the court below, it is par-

ticularly appropriate that such a proceeding should have been and now should be applied in order to determine the amount due to each litigant. That it was not, cannot deprive either of the parties of their rights under the agreement by which the sale was made. The claims of each remained on the fund just as they had existed against the property, and the only change required, in carrying out their agreement is to substitute a court of equity (which the orphans' court is within the sphere of its jurisdiction), in determining the amount due to each. If the only agreement between the parties had been that the property should be sold, as it was sold, in order to avoid the expense of an orphans' court sale, their claims would continue against the fund just as they existed against the property; that those claims had to be adjudicated by a different tribunal than anticipated, because the orphans' court, their agreed arbiter, would not act, cannot affect the rights of either party. It follows that the first and second of the special findings requested by the court below raised immaterial issues, and judgment should have been entered on the findings regarding the original issues raised by the parties themselves.

The judgment of the court below is reversed, and it is ordered that the fund in court be applied, first to the payment of costs, and the balance, with interest, divided between the parties in the proportion of $3,971.44 to appellant and $2,721.03, to appellee.